Ghai-iam, Judge,
delivered the opinion of the court:
The plaintiff here seeks to recover payment of demurrage on more than 900 cars held at the Government reservation upon which Fort Eiley and Camp Funston, Kans., are located, which cars contained material for use in the construction of cantonment buildings at said places.
The Fuller Construction Co. was at the time of the alleged delivery of these cars constructing certain cantonment buildings at Fort Eiley under contracts with the defendant dated May 12, 1917, and June 20, 1917. Fort Eiley was the original Army post; Pawnee Flats adjoins Fort Eiley, and Camp Funston is located about 2 miles east of Pawnee Flats. Under these contracts defendant furnished the material, except the organization, machinery, tools, etc., necessary to do the work, and title to all the work completed or in course of construction was in the defendant. The contracts reserved the right to the defendant “ to pay directly to the common carriers any or all freight charges on material of all kinds and machinery furnished under ” said contracts. The deliveries upon which demurrage is sued for here are alleged to have been made in July, 1917. It. being *774 apparently inconvenient to settle demurrage claimed on each car at time of release, on June 11, and July 20, 1917, respectively, plaintiff entered into two average demurrage agreements with the Fuller Construction Co., the first covering cars handled on account of said company at Fort Eiley and the other cars handled on its account at Camp Funston. By these agreements monthly settlements for de-murrage charges could be made, demurrage to be computed on the basis of the average time of detention of all cars released during the month, the method of computing same being contained in plaintiff’s circular No. 120-C filed with the Interstate Commerce Commission. The sum sued for here is the average demurrage on 931 cars computed according to this circular, claimed to have been delivered to the United States Government or its representative at the points where the cantonment buildings were being erected by a constructing quartermaster. But it does not appear from the facts that said quartermaster made or attempted to make the defendant a party to any average demurrage agreement or to the said two average demurrage agreements entered into with the plaintiff by the said Fuller Construction Co.; nor has it been shown that he had any authority to bind the defendant by any such agreement had he attempted to make it. There being no proof of an express contract on the part of defendant, the plaintiff’s case must rest upon the general principles of law applying to the payment of demurrage.
It is unnecessary to discuss in detail the two methods of computing demurrage, the one based on actual, and the other on constructive, placement. Suffice it to say that plaintiff’s claim in this case is based upon constructive placement; and, of course, under these circumstances in order to create a liability there must be satisfactory proof of notice of arrival in the case of each car. The plaintiff’s regulations and those contained in said Circular 120-C provide for written notice to the consignee within 24 hours after arrival of a car, and the agent must give the consignee written notice of all cars he is unable to deliver because of the condition of the private tracks, or other conditions attributable to the consignee. There is no proof that this written notice was given as to any of the cars upon which *775 demurrage is claimed in this action. The plaintiff’s claim rests upon an alleged agreement between plaintiff, the Fuller Construction Co., and the constructing quartermaster that the written notice be waived, and that the notice be given verbally or by telephone. It is alleged in the petition that the practice under this latter agreement was for the representatives of the Fuller Construction Co., upon receipt of telephonic notice, to check up daily the cars as they arrived, and plaintiff avers that this was done. The proof of it, if it were sufficient notice to bind the defendant, is not satisfactory. There is some proof that the construction company’s representatives and sometimes those of the defendant visited the offices of plaintiff daily, in answer to telephonic notice, to check up the arrival of cars. There is no proof that the particular 931 cars upon which demur-rage is sued for here were thus checked up. That they were rests upon the assumption that notice was given as alleged, and that these 981 cars were so checked under this practice.
It might be sufficient to say that it does not appear that defendant’s representatives received any of these notices or did any of this checking, or that any such agreement waiving notice was made by anyone representing the defendant, or with authority to bind it, and that plaintiff has failed to show what it should show, that the notice was given as to each of the cars named in its bill in this case. This would dispose of the case against the plaintiff. However, there are other matters that should be noticed.
It is incumbent upon a party asserting a claim in court to prove its case with proper evidence; if its case rests upon documentary proof, to.produce the documents, or, if they have been lost or destroyed, proper proof of their contents; if essential facts are necessary to establish its claim, to prove those facts. The mere fact that the claim is complicated, that the items are difficult to prove, does not relieve plaintiff of the necessity of submitting the required proof. For instance, if the plaintiff were suing for demurrage on one car, it would be necessary to prove the arrival of the car at the place of destination, the written notification of its arrival, the hour of day at which free time for unloading expired, and the date of release of the car by the consignee. *776 A failure to prove any one of these facts would prevent it from recovering. If it relied upon a waiver of written notice, such a waiver would not only have to be proved, but it would be necessary to prove verbal notice of the arrival of the car; and to recover for constructive placement it would be further necessary to show that actual placement was not possible owing to the conduct of the consignee.
Plaintiff has failed to show essential facts as to the time of arrival of the cars and date of release. The bills of lading are not produced and there has been no attempt to prove their contents or explain their nonproduction. This-is important as showing the shipment, the names of the consignor and consignee. All the cars shipped were billed to the Fuller Construction Co., as consignee. If the shipments were straight shipments in each case for the Fuller Construction Co., as consignee, the latter would be liable for legitimate demurrage.
Again, the plaintiff mentions in its amended petition what it calls its demurrage bill No. D-21, dated August 13, 1917, which it is alleged was presented to the constructing quartermaster at Camp Funston and a copy thereof, marked “ Plaintiff’s Exhibit A,” “was filed by plaintiff with its original petition herein, and plaintiff refers to the same as its ‘bill of particulars ’ herein,” in which in itemized form are given the alleged numbers of the cars, dates received, dates of constructive and actual placement, date of release, number of days held, and the excess charges. It appears that this bill was not made a part of the plaintiff’s original petition, and under the practice of this court it should not have been filed with that petition. It is admitted that it is a copy. There has been no attempt to prove the accuracy of the items charged in this bill, except by the statement of a witness who says that he compared it during an examination of a few hours of certain records at the office of the company at Camp Funston. The original books and papers are not produced, and it does not even appear from the testimony that plaintiff’s so-cálled “ Exhibit A ” or “ Bill of Par *777 ticulars ” was ever placed in tKe bands of any witness or in any way identified or the contents thereof properly proven. It is not filed with the testimony nor offered in evidence.
This may be a very tedious and troublesome case to prove, and it may be that the proof of it has been difficult and possibly impossible at the date at which this suit was brought, but this does not relieve the plaintiff of the necessity of making proper proof. It is a situation on its face largely due to the conduct of the plaintiff and the manner in which the transactions alleged were carried on with its consent.
It appears that on September 9, 1919, the plaintiff’s attorney submitted to the War Department a bill for the sum claimed in this suit, and that in reply thereto the department in effect stated that if the bill for demurrage were changed “from constructively placed to actually placed” it would be approved. The claim here is, as stated, based upon constructive, not actual, placement.
In no aspect of this case is the plaintiff entitled to a recovery.» The petition should be dismissed, and it is so ordered.
Hat, Judge; DowNet, Judge; Booth, Judge; and Campbell, Ghief Justice, concur.